FILED

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Key West Division

AUG 09 1999

CLERK, USDC / SDFL / WPB

JERRY J. JOHNSON

      Plaintiff,

vs.

KIRK ZUELCH,
      in his official capacity as the
      State Attorney for Sixteenth
      Judicial Circuit of the
      State of Florida; and

RICHARD ROTH,
      in his official capacity as the
      Sheriff in and for Monroe County; and

      Defendants.

_____/

98-10067

CASE NO: ~~98-10067~~-CIV-PAINE

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff JERRY J. JOHNSON, by and through undersigned counsel, sues Defendants

seeking redress for violations of his civil rights and other claims, developed more fully herein, and

states:

### INTRODUCTION

Plaintiff JERRY J. JOHNSON is a certified law enforcement officer formerly employed as

a police officer with the City of Key West Police Department. Prior to his departure from the Key

West Police Department, Plaintiff made allegations against one Sergeant Hammers, also employed

by the Key West Police Department and Plaintiff's supervisor of possibly using cocaine that had

been taken into possession by the Police Department and that Sergeant Hammers may have

misappropriated funds that were to be used for controlled narcotic purchases. Due to personal tragedies, Plaintiff's father requested that his son return back to his home in Georgia on or about October, 1993. This was the same location that Plaintiff JOHNSON had resided prior to his employment with said police Key West Police Department. Prior to his departure from the City of Key West Police Department, Plaintiff left his forwarding address in Georgia. Once in Georgia, Plaintiff remained in contact with both the Police Department and the State Attorney's Office as well as numerous local defense attorneys concerning cases he had participated in as a police officer. Upon his arrival in Georgia, Plaintiff applied to numerous Georgia law enforcement agencies. He also had an application pending with the Georgia Bureau of Investigation for background checks. Agents of Defendant, CITY OF KEY WEST, better known to that Defendant, made false allegations to the agencies preventing Plaintiff JOHNSON from being able to return to employment as a law enforcement officer. Subsequent to October, 1993 the State Attorney's Office requested Plaintiff to voluntarily submit himself to depositions and return back to the City of Key West for a criminal jury trial. In order to refresh his memory of this particular case, Plaintiff requested that his notes from the crime scene investigations be forwarded to him. Both the Police Department and the State Attorney's Office denied the request. Moreover, while in Florida, Plaintiff requested that he be officially summonsed. Furthermore, Plaintiff JOHNSON could not individually afford the costs of transportation back to Monroe County. Despite these requests, the State Attorney's Office by and through John Ellsworth, prepared an Affidavit and a Certification for the detention of Plaintiff JOHNSON. The allegations contained in this Motion and Certification were patently false and did not justify the arrest or incarceration of Plaintiff. Nevertheless, an investigator from the State Attorney's Office at the direction and supervision of John Ellsworth, Russ Papy, and John Subic, a

2

Florida Department of Law Enforcement agent, arrived in Georgia and informed Plaintiff that he was under arrest, handcuffed him, and delivered him to the Monroe County Jail.

He was not properly booked into jail, but informally incarcerated. Such arrest and incarceration were patently illegal. Plaintiff JOHNSON challenged his arrest and incarceration in a Writ of Habeas Corpus that was subsequently granted by an acting Circuit Court Judge of the Sixteenth Judicial Circuit of Monroe County. Upon granting of the Writ of Habeas Corpus and his release from jail, this suit followed.

## JURISDICTION

1.      This action is brought for violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 and 1988. The Jurisdiction of this Court is founded on 28 U.S.C. § 1343. In addition, Plaintiff invokes the pendent jurisdiction of this Court over related or ancillary State Law claims.

## PARTIES

2.      Plaintiff JERRY J. JOHNSON, (hereinafter "JOHNSON"), is a real person, citizen, and resident of the State of Georgia.

3.      Defendant KIRK ZUELCH, (hereinafter "ZUELCH") is and was at all times material hereto, the State Attorney for Sixteenth Judicial Circuit of the State of Florida and is responsible for the promulgation and enforcement of rules, policies and practices relevant thereto. ZUELCH is also responsible for the supervision and training of Ellsworth, Madruga and Papy. Defendant ZUELCH is being sued in his official capacity.

4.      Defendant RICHARD ROTH, (hereinafter "ROTH"), is and was at all times material hereto, the Sheriff in and for Monroe County, a political subdivision of the State of Florida and, as

such, occupies a supervisory position and is responsible for the promulgation and enforcement of rules, policies and practices relevant to the detention and incarceration of individuals at the Monroe County Jail. Roth employs and supervises the individuals who incarcerated and imprisoned Plaintiff. Defendant ROTH is being sued in his official capacity.

## GENERAL ALLEGATIONS

5.      Plaintiff JOHNSON, is a certified law enforcement officer, a former "law enforcement officer of the quarter" in December 1993, and was formerly employed by the City of Key West Police Department.

6.      On or about December of 1993, Plaintiff JOHNSON, was a crime scene detective in the matter of *State vs. Jones, et al.*, Case No. 94-168-CFA and was also a responding officer in an earlier case, *State vs. Cridland, et al.*, Case No. 93-1053-CF.

7.      As of October 3, 1993, Plaintiff JOHNSON's father's health had deteriorated to such an extent that he requested of his son that he return back to his home in Georgia.

8.      At that time, Plaintiff JOHNSON resigned from the City of Key West Police Department and provided both the City of Key West Police Department and the State Attorney's Office for the Sixteenth (16th) Judicial Circuit with his forwarding address in the State of Georgia, and then returned to Georgia to be with his family.

9.      Prior to Plaintiff JOHNSON resigning from the City of Key West Police Department in January 1994, he made allegations against a fellow police officer, one Sergeant Hammers, of possibly using cocaine that had been taken into the possession of the City of Key West Police Department, and having possibly misappropriated funds that were to be used to make controlled narcotic purchases by the City of Key West Police Department.

4

10.     The allegations made by Plaintiff JOHNSON concerning the conduct of Sergeant Hammers and any pending investigation were unconnected with his reasons for departure.

11.     However, Plaintiff JOHNSON's departure from the City of Key West Police Department caused resentment among his previous supervisors and members of the State Attorney's Office for the Sixteenth (16th) Judicial Circuit.

12.     Throughout this time frame, Plaintiff JOHNSON resided with his father at Route 2, Box 2584, Townsend, Georgia 31331, at the same residence where his wife resided, which was also his home of record where he resided prior to accepting employment with the Key West Police Department. At no point in time from the date of February of 1994 to August 1994, did Plaintiff JOHNSON move from that address or attempt to move from that address.

13.     Throughout this time frame, various members of the State Attorney's Office were in repeated contact with Plaintiff JOHNSON regarding various criminal matters. In regard to the matter of *State vs. Cridland, et al.*, Case No. 93-1053-CF, Plaintiff JOHNSON was requested by the State Attorney's Office to do two (2) telephone depositions. Plaintiff JOHNSON informed the State Attorney's Office that he would be unavailable to the State Attorney's Office or the Defense Attorney's Office connected with this matter, due to the fact that he would be unable to perform the deposition without some reference to his notes and reports, which were still located at the Key West Florida Police Department, to refresh his recollection.

14.     Upon information and belief, Ellsworth, knowing of this request on the part of Plaintiff JOHNSON, made contact with Chief Petersen, of the Key West Police Department, and together they decided not to forward the forms and reports to Plaintiff JOHNSON.

15     At no point in time from the period of February of 1994 to July 1994, was Plaintiff JOHNSON served with any subpoenas for any depositions regarding the matter of *State vs. Cridland, et al.* or any other pending action.

16.     At no point in time from February of 1994 until July of 1994, was Plaintiff JOHNSON served with any summons or subpoena so that he would be able to voluntarily appear before the Court regarding the matter of *State vs. Cridland, et al.* or any other pending action.

17.     On or about May of 1994, Papy bragged to various law enforcement officers that he was going to go up to Georgia, arrest Plaintiff JOHNSON, and "drag" him back down to Monroe County, Florida, or words to that close effect.

18.     On or about June 1, 1994, Assistant State Attorney Manuel A. Madruga, under the direction and supervision of Ellsworth, had a telephone conversation with Plaintiff JOHNSON regarding Plaintiff's attendance at the upcoming criminal trial of *State vs. Jones, et al.*, Case No. KW94-168-CF-A.   In that conversation, Plaintiff JOHNSON stated that he was going to be in Indiana with his family on vacation and gave Mr. Madruga his forwarding address.  Mr. Madruga urged the Plaintiff to voluntarily come down for the trial at his own expense.  Plaintiff agreed to attend but told Mr. Madruga that he wanted to be subpoenaed and have the State pay to fly him down because he could not personally afford to pay his own way.

19.     Despite this conversation, Ellsworth prepared, on or about June 22, 1994, without ever having subpoenaed or lawfully summoned the Plaintiff, a Motion for Certification to have the Plaintiff physically detained and brought to the State of Florida. To support this Motion, Ellsworth had Mr. Madruga prepare a sworn affidavit that was knowingly false and/or misleading.

6

20.     On or about June 23, 1994, based upon the above representations of Assistant State Attorney Manny Madruga, an attorney operating under the direction and supervision of ZUELCH through Ellsworth, the Honorable Richard J. Fowler, issued a Certificate requesting that Plaintiff JOHNSON be delivered to the State Attorney's Office.    Said Certification however, did not authorize "arrest" or incarceration of Plaintiff after he had been delivered to the State Attorney's Office.

21.     On or about July 7, 1994, based upon the Certification issued by Judge Fowler, and improperly procured by ZUELCH, the Honorable David L. Cavender of the Superior Court of McIntosh County, in and for the State of Georgia, issued an Order Allowing Immediate Apprehension of J.J. JOHNSON.

22.     On or about July 28, 1994, Plaintiff JOHNSON was scheduled to have a job interview with the Chief of Police for the City of Hinesville, County of Liberty, in the State of Georgia. Plaintiff JOHNSON had previously informed Detective Tom Walker of the Key West Police Department of the date, time, and location of this interview.  At said interview, the Plaintiff was immediately detained by approximately eight (8) law enforcement officers, including ZUELCH'S representatives, based upon Judge Cavender's Order, procured by ZUELCH'S misrepresentations.

23.     The Superior Court of Liberty County, in the State of Georgia, immediately conducted an extradition hearing.  Plaintiff JOHNSON asked to be represented by an attorney.  His request for counsel was denied.   Plaintiff JOHNSON was informed that he was not under arrest (although he was not free to depart) and was merely being detained for transportation to Florida to testify at a trial. Plaintiff JOHNSON was first detained at the Liberty County Jail, from which he was not free to

leave, and than transported to the McIntosh County Jail where he was locked in a cell for the remainder of the night.

24.     On or about July 29, 1994, Investigator Kirby Owen, under the direction and control of ZUELCH through Ellsworth and Papy, along with Subic, as a Special Agent for the Florida Department of Law Enforcement, arrived in McIntosh County, Georgia.  Investigator Owen, Subic and Papy acting for ZUELCH then unlawfully and without probable cause informed Plaintiff JOHNSON that he was under arrest and immediately placed Plaintiff in handcuffs.

25.     Plaintiff JOHNSON was then transported in handcuffs from the State of Georgia and delivered to the custody of the Monroe County Detention Facility, which was under the direction and control of Defendant ROTH.  Defendant ROTH then and there, by and through his deputies, and without any basis for commitment, wrongfully, unlawfully, and against the Plaintiff's will, took Plaintiff into custody, forcibly and without authority, placed Plaintiff in an inmate uniform, confined him to a jail, cell in close proximity to inmates he had previously arrested, as a law enforcement officer of the City of Key West, and unlawfully and without authority imprisoned Plaintiff for approximately three (3) days.

26.     Plaintiff JOHNSON intentionally was never processed, never booked, nor officially recorded as an inmate.  When JOHNSON's parents called the Monroe County Jail, they were falsely told by jail personnel that JOHNSON was not incarcerated in the Monroe County Detention facility.

27.     Plaintiff JOHNSON was never brought before a committing magistrate by Defendant Roth as required by 3.130 Rule (First Appearance), Florida Rules of Criminal Procedure, was never informed of his rights, and was never informed of the nature of the charges pending against him.

8

28.     While incarcerated at the Monroe County Detention Facility, Plaintiff JOHNSON was subjected to death threats by various inmates due to his history as a law enforcement officer with the Key West Police Department. On or about July 30, 1994, an unknown number of inmates attempted to push out plexiglass windows adjacent to their recreation area that separated them from Plaintiff JOHNSON, while shouting that they would kill the Plaintiff if they could reach him. At the time of this occurrence, Plaintiff JOHNSON was unaccompanied by law enforcement or correctional officers within close enough proximity to provide assistance or protection. All named Defendants knew or should have known that such threats and/or violence would occur and that such threats reflected a clear and present danger to the health, safety, and well being of the Plaintiff.

29.     On or about August 1, 1994, Plaintiff JOHNSON, by and through his counsel, filed an Emergency Petition for Writ of Habeas Corpus challenging his illegal incarceration.

30.     On or about August 1, 1994, the Honorable Susan Vernon, as acting Circuit Court Judge, granted said Petition and ordered that Plaintiff JOHNSON be immediately released.

31.     After the Honorable Susan Vernon, in open Court, had JOHNSON's handcuffs removed and granted his Petition for Habeas Corpus, freeing him, JOHNSON was instead returned to a cell for approximately two (2) hours. Next, he was booked into the Jail, which confirmed that he was never properly processed or incarcerated previously, and then later released.

32.     Plaintiff has performed all conditions precedent to bringing this action including the statutory notifications.

### COUNT I - FALSE ARREST
### UNDER TITLE 42 UNITED STATES CODE SECTION 1983

33.     Plaintiff JOHNSON realleges and incorporates by reference paragraphs 1 through 32.

9

34.     Defendants, knew or should have known that the arrest of Plaintiff JOHNSON was illegal and without probable cause.  Such acts and omissions on the part of Defendants violated the rights secured to the Plaintiff by virtue of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

35.     The Defendants acts or omissions were committed under color of law and pursuant to a policy, custom, or practice designed to deprive the Plaintiff of his rights.  Defendants actions which demonstrate that Plaintiff's harm derived from policy, custom, or practice include, but are not limited to with, regard to Defendant ZUELCH, that he:

   a.     Failed to properly request the return of Plaintiff JOHNSON, and;

   b.     Refused to properly subpoena Plaintiff JOHNSON for deposition, and;

   c.     Refused to properly subpoena Plaintiff JOHNSON for trial, and;

   d.     Refused to cooperate with Plaintiff JOHNSON'S reasonable request for his notes related to his potential testimony, and;

   e.     Refused to provide for or pay Plaintiff JOHNSON'S reasonable expenses related to his loss of work and travel to Key West, Florida, and;

   f.     Allowed and/or encouraged false allegations of non-cooperation by Plaintiff, and;

   g.     Allowed and/or encouraged false allegations that Plaintiff was hiding from Defendant's investigators, and;

   h.     Secured Plaintiff's witness extradition based on false allegations, and;

   i.     Allowed, encouraged and/or arranged Plaintiff's illegal arrest, and;

10

j.     Allowed and/or encouraged false allegations that Plaintiff's location was not known but knew Plaintiff's whereabouts sufficiently to locate him for an illegal arrest, and;

k     Caused the arrest Plaintiff JOHNSON without jurisdiction, and;

l.     Procured the arrest on false testimony, and;

m.     Caused Plaintiff to be placed in handcuffs while assuring Plaintiff he was not under arrest, and;

n.     Secured Plaintiff in two (2) different jails in the State of Georgia, and;

o.     Caused the transfer of Plaintiff across State lines, pursuant to a witness extradition based on false allegations, and;

p.     Failed to adhere to the plain language of the witness extradition documentation, which purported to require, only that Plaintiff be returned to the Office of Defendant State Attorney, and;

q.     Knew or should have known that the case, which purported to require Plaintiff's testimony, upon information and belief was to be continued for a period of approximately thirty (30) days eliminating any requirement for Plaintiff's presence in Key West, Florida at the time he was arrested, and;

r.     Intended, absent Plaintiff's successful writ of habeas corpus, to incarcerate Plaintiff for an extended period of illegal imprisonment.

36.     Additional actions and events which demonstrate the previous and continuing pattern, custom and practice of Defendant ZUELCH's efforts to illegally criminalize and incarcerate innocent citizens include, but are not limited to:

      a.      In the case of *State v. Fry*, Case No. 93-226-CFA Defendant, ZUELCH participated in the destruction of an interview recorded tape which would have been exculpatory to the Defendant in an attempt to secure an illegal and improper conviction and incarceration. Defendant was subsequently acquitted.

      b.      In the case of *State v. Murphy*, Case No. 96-31515-MO Defendant ZUELCH sought a criminal conviction on seven (7) counts even after his deputy, the herein mentioned attorney Jon Ellsworth, had indicated that he ". . .could not come up with any violations . . ." or words to that effect. Defendant was ultimately acquitted on all seven (7) counts, after only fifteen (15) minutes of jury deliberation.

      c.      In 1997-1999 Defendant ZUELCH attempted to criminalize the legitimate actions of elected officials under the guise of a "Sunshine Law" Grand Jury investigation, by taking such actions, including:

      i).      Convening a Grand Jury on testimony he knew or should have known was perjured.

      ii).      Conducting the Grand Jury in such a prejudicial manner that the foreperson appeared at a board meeting of the elected officials threatening to ". . .spank. . . ." them.

      iii).      Failing to protect the rights of the elected officials against a politically inspired prosecution and instead fostering such prosecution.

      iv).      Personally leaking secret Grand Jury evidence and/or testimony to the press to attempt to insure an indictment and subsequent conviction through manipulation of the press and citizenry.

v).     Instigating a second investigation after the first Grand Jury retired without indictment in a continuing attempt to procure a second Grand Jury hoping for an indictment to criminalize innocent conduct.

vi).     After citing a conflict, withdrawing,   and causing the second investigation to be transferred to the office of the Dade County State Attorney, Defendant ZUELCH continued to forward prejudicial and perjured materials to the Office of the Dade County State Attorney.[1]

d.     Effecting the recent arrest of gaming boat captain LoraLee Ockerlund for purportedly conducting gambling within the three-mile limit, although the only available credible evidence indicated that the vessel was in international waters.  Charges were subsequently dropped.

e.     Causing the recent and present instigation of a criminal action against Key West businessman/jeweler Manual Marcial in the matter of a civil dispute over the value and/or damage to a ring.

f.     Recurring improper and *ex parte* communications by Defendant ZUELCH to various judges of the 16th Circuit, attempting to discuss the aspects of criminal cases.

37.     Defendants actions which demonstrate policy, custom, or practice include, but are not limited to with regard to Defendant ROTH:

a.     Incarcerated Plaintiff JOHNSON with no known basis for arrest, and;

b.     Acted directly contrary to witness extradition documentation to deliver Plaintiff JOHNSON to State Attorney's Office, and;

c.     Incarcerated with no arrest warrant for Plaintiff JOHNSON, and;

---

[1] Neither the first Grand Jury nor the second investigation reached even a finding of probable cause.

13

       d.      Incarcerated with  no evidence of Plaintiff JOHNSON'S commission of a crime, and;

       e.      Failed to adequately protect Plaintiff while incarcerated, and;

       f.      Provided inadequate physical separation of Plaintiff JOHNSON, a former law enforcement officer in Key West, from other prisoners who were aware of his identity and were threatening to kill Plaintiff.

       g.      Took little or no effective action after inmates made attempts to break through to Johnson to harm him.

       h.      Made no normal or proper initial record of Plaintiff JOHNSON'S incarceration in the Monroe County Detention Center Admission or Classification, and;

       i.      Failed to follow other normal incarceration and booking procedures with regard to Plaintiff JOHNSON, and;

       j.      Denied to Plaintiff JOHNSON'S parents, who called in search of their son, that he was incarcerated in the Key West Detention Facility, even though he was there, and;

       k.      Imprisoned Plaintiff JOHNSON in Monroe County Detention Center for three (3) days against his will, and;

       l.      Made no provision for a review of Plaintiff JOHNSON'S case by magistrate, within the times provided to other inmates and;

       m.      After the release of Plaintiff JOHNSON, by Judge Susan Vernon, through granting of a writ of *habeas corpus*, required that he instead be returned to the jail, and;

       n.      After the release of Plaintiff JOHNSON, by the Judge, required that he be booked into jail so that he could be released.

38.     The acts alleged above were done intentionally, willfully, and with reckless disregard for the safety and rights of the Plaintiff.

39.     As a direct and proximate result of the above described actions and omissions of the Defendants, Plaintiff has suffered damages in amounts which shall be proven at trial.

WHEREFORE, Plaintiff, JERRY J. JOHNSON, by and through undersigned counsel, demands a trial by jury, and requests the following relief:

a.     That the Court determine and enter judgment declaring that the acts and omissions of the Defendants, as set forth above, violate the rights secured to the Plaintiff by virtue of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

b.     That the Court award compensatory damages to the Plaintiff in an amount to be proven at trial;

c.     That the Court award such other and further relief as law and equity allows, including costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II - FOR FALSE IMPRISONMENT
## UNDER TITLE 42 UNITED STATES CODE SECTION 1983

40.     Plaintiff JOHNSON realleges and incorporates by reference paragraphs 1 through 32.

41.     Defendants, knew or should have known that the imprisonment of Plaintiff JOHNSON was illegal and without probable cause.  Such acts and omissions on  the part of Defendants violated the rights secured to the Plaintiff by virtue of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

42.     The Defendants before stated acts or omissions were committed under color of law and pursuant to a policy, custom, or practice designed to deprive the Plaintiff of his rights. Defendants actions which demonstrate policy, custom, or practice include, but are not limited to the specific acts enumerated in paragraphs 35, 36, and 37 above, including all of their sub-paragraphs.

43.     The acts alleged above were done intentionally, willfully, and with reckless disregard for the safety and rights of the Plaintiff.

44.     As a direct and proximate result of the above described actions and omissions of the Defendants, Plaintiff has suffered general damages in amounts in an exact amount of which shall be proven at trial.

WHEREFORE, Plaintiff, JERRY J. JOHNSON, by and through undersigned counsel, demands a trial by jury, and requests the following relief:

a.     That the Court determine and enter judgment declaring that the acts and omissions of the Defendants, as set forth above, violate the rights secured to the Plaintiff by virtue of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

b.     That the Court award compensatory damages to the Plaintiff in an amount which shall be proven at trial;

c.     That the Court award such other and further relief as law and equity allows, including costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT III - VIOLATION OF DUE PROCESS

45.     Plaintiff JOHNSON realleges and incorporates by reference paragraphs 1 through 32.

46.     Defendants, knew or should have known that the Plaintiff should have been given due process by being brought before a committing magistrate within twenty-four hours of his

16

incarceration but intentionally refused to do so. Such acts and omissions on the part of Defendants violated the rights secured to the Plaintiff by virtue of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

47.     The Defendants before stated acts or omissions were committed under color of law and pursuant to a policy, custom, or practice designed to deprive the Plaintiff of his rights. Defendants actions which demonstrate policy, custom, or practice include, but are not limited to the specific acts enumerated in paragraphs 35, 36, and 37 above, including all of their sub-paragraphs.

48.     The acts alleged above were done intentionally, willfully, and with reckless disregard for the safety and rights of the Plaintiff.

49.     As a direct and proximate result of the above described actions and omissions of the Defendants. Plaintiff has suffered general damages in amounts in an amount of which shall be proven at trial.

WHEREFORE, Plaintiff, JERRY J. JOHNSON, by and through undersigned counsel, demands a trial by jury, and requests the following relief:

a.     That the Court determine and enter judgment declaring that the acts and omissions of the Defendants, as set forth above, violate the rights secured to the Plaintiff by virtue of the Fourth. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

b.     That the Court award compensatory damages to the Plaintiff in an amount to be proven at trial:

c.     That the Court award such other and further relief as law and equity allows, including costs. expenses. and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

17

## COUNT IV  -  FALSE ARREST
### (State Law Claim)

50.      Plaintiff JOHNSON realleges and incorporates by reference paragraphs 1 through 32.

51.      Defendant ZUELCH is sued in his official capacity under this count for false imprisonment.

52.      Acting for ZUELCH, Ellsworth, an attorney, and Papy, a certified law enforcement officer, knew or should have known that there was no probable cause to arrest Plaintiff JOHNSON and that they lacked lawful authority to arrest Plaintiff JOHNSON outside the State of Florida, yet in their respective capacities, they instructed Investigator Owen to unlawfully and without probable cause arrest Plaintiff JOHNSON in the State of Georgia as set forth above.  Subic, as a Special Agent of the Florida Department of Law Enforcement, acting for ZUELCH, as the representative of the State of Florida, knew or should have known that there was no probable cause to arrest Plaintiff JOHNSON and that he lacked lawful authority to arrest Plaintiff JOHNSON outside the State of Florida and yet he did unlawfully and without probable cause arrest Plaintiff JOHNSON in the State of Georgia as set forth above.

53.      As a direct and proximate result of the above described actions of ZUELCH by Ellsworth, Papy, and Subic, Plaintiff has suffered extreme humiliation and embarrassment, as well as other real and substantial injuries, for which general damages are recoverable, the exact amount of which shall be proven at trial.

WHEREFORE, Plaintiff, JERRY J. JOHNSON, by and through undersigned counsel, demands a trial by jury, and requests the following relief:

18

a.   That the Court determine and enter judgment declaring that the acts of Defendant, ZUELCH, through Ellsworth, Papy, and Subic, as set forth above, constituted false arrest;

b.   That the Court award compensatory damages to the Plaintiff in an amount to be proven at trial;

c.   That the Court award such other and further relief as law and equity allows, including costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT V - FALSE IMPRISONMENT
### (State Law Claim)

54.   Plaintiff JOHNSON realleges and incorporates by reference paragraphs 1 through 32.

55.   Defendant ROTH is sued in his official capacity under this count for false imprisonment.

56.   Defendant knew or should have known that there was no lawful authority to imprison Plaintiff JOHNSON.

57.   Plaintiff JOHNSON, at the time he was arrested and imprisoned, was acting lawfully as a private citizen under no previous summons, subpoena, or court order requiring incarceration. No warrant for Plaintiff JOHNSON's arrest and imprisonment was ever issued. Plaintiff JOHNSON was not at the time of his arrest and imprisonment, or at any other time, charged with any criminal offense. Johnson's detainment was unlawful and contrary to his will.

58.   As a direct and proximate result of the above described actions of Defendant ROTH, Plaintiff JOHNSON was subjected to death threats, unlawful confinement, and suffered extreme

19

humiliation and embarrassment for which general damages are recoverable, the exact amount of which shall be proven at trial.

WHEREFORE, Plaintiff, JERRY J. JOHNSON, by and through undersigned counsel, demands a trial by jury, and requests the following relief:

a.      That the Court determine and enter judgment declaring that the acts of Defendant ROTH, as set forth above, constituted false imprisonment;

b.      That the Court award compensatory damages to the Plaintiff in an amount to be proven at trial;

c.      That the Court award such other and further relief as law and equity allows, including costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

COUNT VI - ATTORNEY'S FEES

59.      Plaintiff has been required to retain the undersigned counsel to address the wrongs herein enumerated and has contracted to pay a reasonable fee. Plaintiff is entitled to and hereby makes claim for an award of reasonable attorney's fees, expenses and costs pursuant to 42 U.S.C. 1988 to enforce the provisions of 42 U.S.C. 1983 should he be determined to be a prevailing party in the instant action.

COUNT VII - DEMAND FOR JURY TRIAL

60.      Plaintiff demands trial by jury on all issues so triable.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing has been furnished by (delivery) (facsimile) (mail) FEDERAL EXPRESS to: Richard A. Giuffreda, Attorney for Defendant Richard Roth, 1322 S.E. Third Avenue, Fort Lauderdale, FL 33316, and Dirk M. Smits, Esquire, Attorney

20

for Defendant, Kirk Zuelch, P. O. Drawer 529, Islamorada, FL 33036,  on this _____ day

of _____, 1999.

MICHAEL R. BARNES
Attorney for Plaintiff
801 Whitehead Street
Key West, FL  33040-1777
(305) 296-5297
(305) 296-5254
Florida Bar No. 0906565

::Shared clients U AMENDED COMPLAINT.003 wpd

21